JAMES O. NEWELL, FREDERICK NEWELL: FOUAD A. HALABY, EUGENIA S. HALABY: ROBERT WARREN, MARGE WARREN: JAMES BURT AND SHIRLEY BURT *v.* STANDARD LAND CORPORATION: JOHN C. GOULD, MRS. JOHN C. GOULD, SCOTIA DEVELOPMENT CORPORATION, OTIS MCFADDEN, EZRA SHANEBECK, ROBERT HATTERSLY, WILLIAM BERGDALL, MERLE FELGER, WILLIAM SOWERS, WILLIAM SWEET, GEORGE DUNTEN, AND CHARLES HOEMIG, INDIVIDUALLY AND COLLECTIVELY AS ALLEN PLAN COMMISSION, ATTORNEY GENERAL OF THE STATE OF INDIANA.

[No. 2-173A25. Filed June 28, 1973.]

*Mentor Kraus, John M. Clifton, Jr., Wayne L. Witmer, Barrett, Barrett & McNagny,* and *J. A. Bruggeman,* of counsel, all of Fort Wayne, for appellant.

*Robert Thompson, Hoffman, Moppert, Solomon & Miller,* of Fort Wayne, for appellee, Standard Land Corporation; *Carl J. Suedhoff, Jr., Hunt, Suedhoff, Borror & Eilbacher,* of Fort Wayne, for appellees, John C. Gould, Mrs. John C. Gould and Scotia Development Corporation; *James R. Solomon, Hoffman, Moppert, Solomon & Miller,* for all other appellees.

SUMMARY JUDGMENT CASE

SHARP, J.—Appellants filed a complaint in multiple paragraphs alleging that they were the owners of real estate in Aboite Township, Allen County, Indiana which is contiguous to Brook Hollow Drive. Count I of the complaint alleged that the Appellants had purchased their real estate from the Appellee, Standard Land Corporation, hereafter SLC, and in purchasing it SLC represented to them that said real estate was a part of and subject to the land use restrictions of Brook Hollow Estates. It further alleged that SLC and Appellees, John C. Gould and Scotia Development Corporation, hereafter SDC, owned or claimed to own land which is a part of Brook Hollow Estates and were threatening to use or develop the same in violation of the restrictions applicable to said real estate. It was further alleged that Appellees, John C. Gould and SDC, had filed a preliminary plat of the proposed development with the Allen County Plan Commission, which preliminary plat included a substantial portion of Brook Hollow Estates and proposed uses therein in violation of the Brook Hollow Estates restrictions. Count I prayed for an injunction from proceeding on said proposed plat. Count II prayed for money damages on the basis of the allegations in Count I. Count III was a class action which asserted that Allen County ordinance number 9-1960 on its face violated the Fourteenth Amendment of the Constitution of the United States and also violated Article I, Section 21 and 23, of the Constitution of the State of Indiana, and further alleged that Allen County ordinance 9-1960 was illegal, arbitrary and capricious in that it violated the enabling legislation of the State of Indiana authorizing the establishment of zoning ordinances and plan commissions in that it did not specify ecological factors as a criterion to be considered in respect to proposed plats. A permanent injunction was prayed for in Count III.

Count IV alleged that Allen County ordinance 9-1960 was unconstitutional in that it provided unreasonable classifications

of persons entitled to be given notice and to be heard in respect to proposed plats.

Count V alleged that the approval of a lake on Appellees' land was made without utilization of proper standards and was therefore arbitrary and capricious in violation of the Fourteenth Amendment of the Constitution of the United States.

Count VI alleged that the proposed sewage treatment plant in conjunction with the development proposed by the Appellees would empty into and result in the pollution of Indian Creek, a natural course, and prayed for an injunction preventing the defendants from erecting or constructing a sewage treatment plant to empty into Indian Creek.

In June of 1968 Appellee, John C. Gould, purchased approximately 37 acres of land in Aboite Township, Allen County, Indiana from Appellee SLC. Part of the land Gould purchased from SLC was a section in what is commonly known as Brook Hollow. At the time of Gould's purchase, some of the Appellants owned portions of Brook Hollow consisting of parcels ranging from three acres to twelve acres each. These Appellants had also purchased their land from SLC and assert that their purchases were made with certain restrictions imposed thereon. The record here clearly discloses that there was never any express written covenants covering the restrictions of the use of the land purchased by the Appellants from SLC and there was never any such restrictions recorded. The Appellants have asserted by way of deposition testimony that SLC made certain verbal agreements as to restrictions of use concerning the estates which the Appellants purchased. Gould has sworn to the fact that SLC told him that there were no restrictions of use when he purchased his land subsequent to that of the Appellants in June of 1968. Gould claims ignorance of any alleged restrictions of use which may have existed between the Brook Hollow Appellants and SLC on the basis that he had no actual knowledge of the same and that no public record disclosed the existence of said restrictions. After Gould purchased the real estate he decided to develop

a part of the land which consisted of approximately 37 acres by the construction of a lake and a tertiary disposal sewage treatment plant on the far southeast corner thereof, not adjacent to any land owned by the Appellants in Brook Hollow. The plans for development consisted of common areas for recreation, bridle paths, natural walkways, water falls and a lake and beach, all of which are adjacent to a planned residential area on land adjacent to but not a part of Brook Hollow. In November of 1970, over two years after Gould purchased the land he submitted his development plan to the Allen County Plan Commission. The complaint in this case was filed by the Appellants on January 7, 1971. In November 1970 and March 13, 1971 the Allen County Zoning ordinance was amended to cause a broader group of persons and legal entities to be given notice of public hearings which are conducted pursuant to plans submitted by those such as the ones submitted by Gould. The public hearing concerning Gould's plan took place on April 14, 1971 and preliminary approval of the Gould plan was approved by the Allen County Plan Commission. There was a public hearing conducted on September 8, 1971 to consider the final plat of the proposed plan and final approval was given. The Allen County Plan Commission provided notice to all of the Appellants in this cause of said hearing because all Appellants were within the broad group of persons defined in the ordinance as having a "probable interest" in the Plan Commission's approval or disapproval of the Gould plan. Before the Allen County Plan Commission granted approval of Gould's plan, the Natural Resources Commission of the State of Indiana approved the construction of the lake. Also, the Indiana State Board of Health approved the sewage treatment aspect of Gould's plan and found it to be compatible with the health of the community. The Scotia Development Corporation is the legal entity which John C. Gould and wife have chose to utilize in developing the land purchased by Gould and that corporation is entirely owned by John C. Gould and his wife.

Appellees John C. Gould, his wife, and SDC moved for summary judgment. Numerous affidavits, depositions, answers to interrogatories, and responses to request for admissions were before the trial court in ruling on said motion for summary judgment. (It should be noted that summary judgment was not requested by nor granted to the Appellee SLC and SLC is subject to a trial on merits on the allegations in Appellants' complaint.) The trial court granted the motion for summary judgment of Goulds and SDC and stated the reasons for granting summary judgment.

The propriety of granting said motion for summary judgment is challenged on this appeal.

One of the key items upon which the Appellants rely to show the existence of a genuine issue of material fact is the affidavit of attorney John M. Clifton, Jr. That affidavit reads as follows:

"1. That he is the attorney for the plaintiffs and authorized by them to make this affidavit for and on their behalf.

2. That on the afternoon of December 7, 1970, affiant did in fact have a telephone conversation with Edward J. Moppert, Jr., attorney, officer and director of Standard Land Corporation, defendant herein.

3. That during said conversation, the aforesaid Edward J. Moppert, Jr. did in fact advise affiant that the area abutting Brook Hollow Drive had not been platted as Sam Fletcher or Floyd Kelsey did not want to go to the expense of platting the area.

4. That also as a part of said telephone conversation, the aforesaid Edward J. Moppert, Jr. did in fact state to the affiant that everyone who purchased land from Standard Land Corporation in the Brook Hollow area knew about the restrictions and had agreed with Standard Land to follow same in their use of their property. Mr. Moppert further advised affiant that everybody living in Brook Hollow was getting along in a friendly manner with the restrictions, and there had been no problems.

5. That the aforesaid Edward J. Moppert, Jr., did in fact, on December 7, 1970, by telephone, tell the affiant that he was sure that Dr. Gould, who had purchased land from Standard Land Corporation abutting on Brook Hollow Drive, knew about restrictions on the use of the real estate at the time of the sale, and that Dr. Gould, as far as Mr.

Moppert knew, would be utilizing the real estate he purchased from Standard Land for estate sized lots. The said Edward J. Moppert also advised affiant that he hoped, with Dr. Gould's new development plans, there would not be any trouble."

The Appellees challenge the sufficiency of the affidavit of John M. Clifton, Jr. within the meaning of TR. 56 (E) which provides:

"Form of affidavits — Further testimony — Defense required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, further affidavits, or, within the discretion of the judge, testimony of witnesses. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Denial of summary judgment may be challenged by a motion to correct errors after a final judgment or order is entered."

The Appellees assert that said affidavit is not sufficient to raise or infer an issue of fact because it does not set forth facts as would be admissible in evidence. Any admission against interest made by an officer of SLC could be admitted into evidence *against* SLC. Also an affidavit from Moppert which stated the positive fact that Gould knew of the restriction might present admissible evidence that would infer a genuine issue of material fact. In *Dubois County Machine Co.* v. *Blessinger* (1971), 149 Ind. App. 594, 274 N.E.2d 279, 281, the following interpretation of TR. 56 (E) was made:

"Defendants objected to the affidavit of Edwin A. Vogler filed in opposition to the motion for summary judgment. Defendants properly point out that affidavits submitted

on a motion for summary judgment must be composed of facts which would be admissible in evidence. [Citing the language of TR. 56(E).] The affidavit of Vogler relates to negotiations between Leo Blessinger, who died November 22, 1954, the affiant, and another agent of Dubois, also deceased. Defendants argue that Vogler could not testify to such facts because of the dead man statute, therefore such facts should not be considered when ruling on the motion for summary judgment. Even disregarding those parts of the affidavit which would not be admissible as evidence, . . ."

One of the leading treatises on Federal Civil Procedure states:

"Affidavits containing statements made merely 'on information and belief' will be disregarded. Hearsay testimony and opinion testimony that would not be admissible if testified to at the trial may not properly be set forth in an affidavit." 6 Moore's Federal Practice (1972) at pp. 2806-08.

Since TR. 56(E) is identical to its Federal counterpart the interpretation of it by the federal judiciary is proper for our consideration. In this regard see *Seward* v. *Nissen* (D.C. Del. 1942), 2 F.R.D. 545; *Washington Post Company* v. *Keogh* (D.C. Cir. 1966), 365 F. 2d 965; *Turner* v. *Lungquist* (9th Cir. 1967), 337 F. 2d 44; *Dailey Press, Inc.* v. *United Press International* (6th Cir. 1969), 412 F. 2d 126.

The affidavit of Clifton represents a classical case of inadmissible hearsay as to Gould. See *Wayne Works* v. *Hicks Body Co., Inc.* (1944), 115 Ind. App. 10, 55 N.E.2d 382; *State* v. *Schaller* (1942), 111 Ind. App. 128, 40 N.E.2d 976. It does not represent any evidence that Clifton could testify to as against Gould.

Therefore under Rule 56(E) said affidavit is not sufficient to be the basis of showing a genuine issue of material fact.

The Appellants must here show enough to infer actual or constructive knowledge by Gould of the restrictions in question. Since Indiana has no statutes which govern the creation, definition or interpretation of restrictive covenants the same

must be considered in terms of the case law. In *Vierk* v. *Ritenour* (1961), 131 Ind. App. 547, 172 N.E.2d 679, 683, the Appellate Court defined covenants as follows:

> "Generally speaking a covenant is an agreement duly made to do, or not to do a particular act. It is a species of express contract. Covenants may be divided ▆ into two classes; covenants in deed, or express covenants; and covenants in law or implied covenants. . . . Indiana follows this general rule . . ."

There is no contention here that the covenants involved are express covenants. An implied covenant can arise between the immediate parties to a conveyance even though the restriction or agreement is not expressly included in the deed which evidences the conveyance of title. See *Page* v. *Lashley* (1860), 15 Ind. 152.

In *Starz* v. *Kirsh* (1922), 78 Ind. App. 431, 136 N.E. 36, 37, the Appellate Court said:

> "It is clear that appellee's title to the land in question, and his right to the unrestricted use thereof, would not be affected by said agreement, no matter what construction is placed thereon, unless he had knowledge of its existence at the time he acquired title thereto. The court found he had no personal or actual knowledge at that time, and therefore, unless it can be said that he had constructive knowledge of its existence, his rights are unaffected thereby.
>
> \* \* \*
>
> "It follows that, since appellee had neither actual nor constructive notice of such agreement, at the time he acquired title to the land in question, its provisions could not be enforced against him, even upon equitable grounds."

Generally, whether there is actual or constructive notice depends upon the facts of the particular case. The question here is to determine whether or not the affidavits, answers to interrogatories, responses to request for admissions, depositions and pleadings taken in the light most favorable to the Appellants show any fact or inference whatsoever that Gould had either actual or constructive knowledge of the restrictions which purported to exist between SLC and the Appellants.

The Appellants are basically attempting to prove constructive notice of implied covenants.

We are well aware that the pleadings, answers to interrogatories, responses to requests for admissions, affidavits and depositions are to be read in the light most favorable to the party opposing summary judgment and we have carefully considered them in that light here. There is nothing in this record from which a trier of fact could infer actual knowledge on the part of Gould of these restrictions. They were not of record and he had caused the abstracts to be examined by an attorney. The Appellants suggest that Gould should have been put on notice by his observations of the nature of the area. We reject this argument and hold that such does not meet the minimum requirements of constructive notice as set out in *Starz, supra.* In this regard the sworn answers to interrogatories of SLC disclose the following salient facts:

(1) never prepared formal plats of the area;
(2) only "roughed out" the size of the "lots";
(3) never recorded plats and/or restrictions;
(4) considered the restrictions to be "informal";
(5) showed the restrictions to customers on an informal and "irregular" basis;
(6) denies even showing lists of restrictions to prospective purchasers;
(7) sold the unplatted "lots" by metes and bounds descriptions;
(8) denies the restrictions were ever to be legally binding; and,
(9) did not make any representations to Gould concerning restrictions.

We hold that at the time of his purchase of the land in question, the record fails to disclose anything from which it could be properly inferred that Gould had actual or constructive notice of said restrictions.

The Appellants have made no cogent argument in their brief here in regard to the constitutional issues raised in Counts III and IV and therefore the summary judgment on those should be affirmed. Likewise, the Appellants have made

no such argument with regard to Count V in which they intermingle a constitutional-ecological argument and therefore the summary judgment with reference to it should be affirmed.

Lastly, the Appellants make no such argument here with regard to the sewage treatment plant referred to in Count VI and therefore summary judgment as to that Count should also be affirmed.

The Appellants have therefore failed to make any cogent argument in reference to Counts III, IV, V and VI to their complaint or to cite any authority whatsoever in regard to the same. Therefore, under AP. 8.3 we have been presented no basis to consider the reversal of summary judgment in respect to those four counts. See *Grow* v. *Indiana Retired Teachers Community* (1971), 149 Ind. App. 109, 271 N.E. 2d 140.

The Appellees here, except SLC, were entitled to a judgment as a matter of law and therefore the entry of summary judgment was proper and is hereby affirmed.

Affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 297 N.E.2d 842.